UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  2/16/2021
```

| | |
|---|---|
| In re George Washington Bridge Bus Station Development Venture LLC,<br><br>                              Debtor, | 20-cv-1324 (AJN) |
| Tutor Perini Building Corporation,<br><br>                              Appellant,<br><br>              -v-<br><br>George Washington Bridge Bus Station Development Venture LLC, *et al.*,<br><br>                              Appellees. | OPINION & ORDER |

ALISON J. NATHAN, District Judge:

Tutor Perini Building Corporation appeals from a bankruptcy court order denying it derivative standing to pursue several claims against other creditors on behalf of Chapter 11 debtor George Washington Bridge Bus Station Development Venture LLC. Tutor Perini has not demonstrated that its pursuit of these claims would be in the best interests of the bankruptcy estate. Thus, the bankruptcy court did not abuse its discretion in denying derivative standing, and this Court affirms its order.

I.     **Background**

In the summer of 2011, the Port Authority of New York and New Jersey entered into a public-private venture with George Washington Bridge Bus Station Development Venture LLC to renovate the George Washington Bridge Bus Station. Debtor's Excerpts of Record (DER), Dkt. No. 14, at 3. The $183-million project entailed relocating the bus terminals to the third

floor of the complex and developing a 129,000-square-foot retail center on the lower floors. *Id.* at 3–4. The development company (the debtor in this bankruptcy proceeding) engaged Tutor Perini as the project's general contractor with a guaranteed maximum price of about $100 million. *Id.* at 4. The development company also received a 99-year ground lease to operate and maintain the retail center. *Id.* The project was initially anticipated to take a year to complete. *Id.* at 14. The development company finally began leasing operations in 2017. *Id.*

As the project dragged on, the development company encountered significant liquidity problems, though the parties dispute whether those problems resulted primarily from initial undercapitalization or delays and cost overruns in construction. *See* Opening Br., Dkt. No. 11, at 11; Debtor Opp. Br., Dkt. No. 18, at 3–4. The development company obtained third-party financing in the form of loans secured by the ground lease. In 2019, it entered Chapter 11 bankruptcy. DER 1–2. Tutor Perini is now one of its largest unsecured creditors, with claims totaling $113 million.

This case concerns Tutor Perini's standing to assert claims on behalf of the bankruptcy estate that the debtor has elected not to pursue. Tutor Perini sought derivative standing to pursue three claims on the debtor's behalf before the bankruptcy court. *See* Opening Br. at 1–2; Appellant's Excerpts of Record (AER), Dkt. No. 12, at 112–53

First, Tutor Perini sought derivative standing to pursue a claim for contractual subordination under § 510(a) of the Bankruptcy Code. That subsection allows enforcement of contractual subordination provisions on the same terms that those provisions would be enforceable outside of bankruptcy. 11 U.S.C. § 510(a). The ground lease between the Port Authority and the development company states that "the rights of the holder of any Mortgage, including a Recognized Mortgagee, shall be subject and subordinate" to the ground lease. AER

334.  In a separate section, the ground lease states that the development company "shall pay all claims lawfully made against it by its contractors, subcontractors, material-men and workmen … arising out of or in connection with or because of the performance of the Construction Work." *Id.* at 250.  Thus, Tutor Perini contends that the ground lease subordinates the development company's secured mortgage obligations to any claims for payment for construction work—that is, Tutor Perini's claims.

Second, Tutor Perini sought derivative standing to pursue a claim for statutory subordination under § 510(b) of the Bankruptcy Code.  That subsection states that claims arising from the purchase or sale of a "security" of the debtor shall be subordinate to other claims.  11 U.S.C. § 510(b).  Though styled as loans, Tutor Perini argues that various promissory notes and secured mortgages held by other creditors qualify as "securities" within the meaning of § 510(b).  Thus, it argues that those obligations should receive lower priority than obligations to other creditors—including, for example, the development company's obligations to Tutor Perini.

Third, Tutor Perini sought derivative standing to pursue a claim under § 506(a) of the Bankruptcy Code, which limits the secured portion of a claim secured by a lien on property to the value of the creditor's interest in that property.  Tutor Perini contends that any assignment of the ground lease would require the development company to cure any defaults under the lease.  It claims that the cost of cure, which in its view would include the development company's substantial obligations to Tutor Perini, exceeds the value of the ground lease.  Thus, Tutor Perini argues that those creditors whose loans are secured by the ground lease must be treated as unsecured creditors and that Tutor Perini must be paid first.  Tutor Perini refers to this as its "cure claim."

Following briefing and argument, the bankruptcy court denied Tutor Perini derivative standing to pursue these claims on behalf of the bankruptcy estate.  AER 860–65.  The bankruptcy court provided two, independently sufficient bases for its ruling.  First, it found that Tutor Perini's pursuit of the claims would not be in the best interests of the estate.  *Id.* at 860–61. It reasoned that the claims would not bring any incremental value to the estate and that, rather than advancing the interests of the estate as a whole, it merely sought to have its interests preferred over those of other creditors.  *Id.* at 861.  It further found that the litigation would create additional costs for the estate and frustrate an expeditious sale of the ground lease.  *Id.* at 865.  Second, it concluded that the claims Tutor Perini sought to bring were not colorable. *Id.* at 861–65.  Tutor Perini appeals from that order.

While this appeal was pending, the bankruptcy court approved a settlement among the development company, the Port Authority, and secured creditors resolving the Port Authority's claim for cure of the ground lease.  *See* Dkt. No. 23.  It further found that Tutor Perini was not an intended beneficiary of the ground lease and that Tutor Perini had no right to assert a cure claim on its own behalf.  *See id.*

## II.    Standard of Review

This Court reviews a bankruptcy court's conclusions of law de novo and its factual findings for clear error.  *In re Sabine Oil & Gas Corp.*, 562 B.R. 211, 215–16 (S.D.N.Y. 2016) (citing *In re Halstead Energy Corp.*, 367 F.3d 110, 114 (2d Cir. 2004)).  A bankruptcy court's ruling on derivative standing represents an application of its equitable powers and requires it to weigh a variety of fact-intensive considerations, including the likely duration of litigation and the probability of recovery.  Courts thus review such determinations for abuse of discretion.  *Id.*; *In re Adelphia Commc'ns Corp.*, 371 B.R. 660, 665 (S.D.N.Y.2007), *aff'd*, 544 F.3d 420 (2d Cir.

2008) (Sotomayor, J.).[1]  "A ruling is an abuse of discretion only if the bankruptcy court 'bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.'"  *Peskin v. Picard*, 440 B.R. 579, 584 (S.D.N.Y. 2010) (quoting *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005)).

## III.  Discussion

The Second Circuit has recognized an implied, qualified right for creditors to pursue claims on behalf of a debtor in possession with the approval of the bankruptcy court.  *In re STN Enters.*, 779 F.2d 901, 904 (2d Cir. 1985).  In *STN*, the court held that a creditors' committee could bring claims on a debtor's behalf if the debtor or trustee unjustifiably failed to do so.  *Id.* The court later held that a creditors' committee could also assert a debtor's claims with the debtor's consent.  *In re Commodore Int'l Ltd.*, 262 F.3d 96, 100 (2d Cir. 2001).  Both of these holdings extend to individual creditors as well as creditors' committees; however, in either case, courts "only grant standing to creditors—either individuals or committees—where doing so is in the best interest of the estate."  *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 71 n.7 (2d Cir. 2002).

A debtor unjustifiably fails to assert a claim where a colorable claim supports recovery and pursuit of that claim would benefit the bankruptcy estate.  *STN*, 779 F.2d at 905.  In determining whether a creditor's pursuit of a debtor's claim would best serve the estate's interests, the bankruptcy court may consider the likelihood of success, the amount of any

---

[1] Contrary to this authority, Tutor Perini contends that the bankruptcy court's determination that derivative standing would not be in the estate's best interests was a legal conclusion and that this Court should thus review it de novo.  Opening Br., Dkt. No. 11, at 4.  The Court disagrees.  *See Adelphia*, 544 F.3d at 425 ("Having concluded that the bankruptcy court possessed the authority to confirm a plan that transferred the Equity Committee's claims to a litigation trust, we next decide whether the bankruptcy court abused its discretion in determining that the transfer was in the best interests of the estate.").  However, even applying de novo review, the Court would reach the same conclusion as the bankruptcy court and affirm.

financial recovery, the litigation costs for the estate, and the resulting delay in disposition of the estate. *Id.*; *see also Adelphia*, 544 F.3d at 425–26 (upholding a bankruptcy court's determination that piecemeal litigation by separate committees would not be in the estate's best interests). "Although *STN Enterprises*, *Commodore* and *Housecraft* expanded the scope of derivative standing," these cases left intact "the [bankruptcy] court's responsibility to monitor for abuses by the parties." *Adelphia*, 544 F.3d at 424. Thus, a bankruptcy court possesses "significant authority" to weigh these factors as it sees fit and assess whether a creditor's pursuit of a debtor's claims will benefit the estate. *Commodore*, 262 F.3d at 100. "Requiring bankruptcy court approval conditioned upon the litigation's effect on the estate helps prevent committees and individual creditors from pursuing adversary proceedings that may provide them with private benefits but result in a net loss to the entire estate." *In re AppliedTheory Corp.*, 493 F.3d 82, 86 (2d Cir. 2007) (per curiam).

The Second Circuit does not impose a heightened standard when an individual creditor, rather than a creditors' committee, seeks derivative standing. *See Housecraft*, 310 F.3d at 71 n.7. However, it has recognized that a creditor's unique position might affect whether its pursuit of a debtor's claim would best serve the estate. Most obviously, dueling sets of creditors pursuing overlapping claims are unlikely to be in the estate's interests. *Adelphia*, 544 F.3d at 426. But the bankruptcy court may also conclude that a creditor's interests "conflict with those of the estate, thereby rendering creditor derivative standing inappropriate." *In re Smart World Techs., LLC*, 423 F.3d 166, 179 (2d Cir. 2005); *see also Adelphia*, 544 F.3d at 426 (derivative standing inappropriate once creditors' committee abandoned its "cooperative stance"). That is, the bankruptcy court may consider not only whether pursuit of a claim by *some* creditor would benefit the estate, but also whether pursuit of a claim by *this* creditor would benefit the estate.

6

Tutor Perini does not seriously contest the factual bases of the bankruptcy court's conclusion that pursuit of its proposed claims would not serve the best interests of the estate. It does not contest the bankruptcy court's finding that the claims Tutor Perini seeks to pursue would not bring incremental value to the estate. Opening Br. at 16–17. To the contrary, it conceded before the bankruptcy court that if a creditors' committee existed, it would likely object to Tutor Perini's claims because they sought to elevate its own interests above those of other creditors rather than enlarging the size of the estate. *See* AER 838. Instead, it contends that claims need not be likely to "result in a cash recovery for the estate in order for the estate to benefit." Opening Br. at 15.

Nor does Tutor Perini dispute the bankruptcy court's finding that pursuit of the claims would result in substantial costs to the estate. *See* AER 865. Tutor Perini conceded before the bankruptcy court that it would seek reimbursement of litigation expenses from the bankruptcy estate if it prevailed on its claims. *See* AER 836. Tutor Perini half-heartedly suggests that external developments, rather than the cloud of litigation, bear primary responsibility for any difficulty in assigning ground lease. Reply Br., Dkt. No. 21, at 13. But the cure claim it seeks to pursue by its terms would place onerous conditions on assignment of the lease. Indeed, Tutor Perini has objected to assignment of the lease before the bankruptcy court on that basis. *See* Dkt. No. 23-1, at *22. Reviewing for clear error, the record provides no basis to disturb the bankruptcy court's factual findings that Tutor Perini's pursuit of its proposed claims would result in significant costs for the estate and frustrate or delay assignment of the ground lease.

The Court also finds no legal error. Tutor Perini objects that the bankruptcy court wrongly considered that Tutor Perini's "other interests . . . color[ed] [Tutor Perini's] ability to act on behalf of the estate." Opening Br. at 15 (third alteration in original) (quoting AER 861). It

also contends that the bankruptcy court erred by concluding that Tutor Perini's claims would not benefit the estate because they would not "bring incremental value into the estate." *Id.* at 16 (quoting AER 861).

Tutor Perini's first objection may be dismissed out of hand. The Second Circuit held expressly in *Smart World*, 423 F.3d at179, that a conflict of interest may render derivative standing inappropriate. It said roughly the same in *Adelphia*, 544 F.3d at 426, where it approved a bankruptcy court transferring litigation authority to a litigation trust after a creditors' committee adopted an uncooperative posture towards other parties to the proceeding, raising the specter of protracted litigation. Tutor Perini offers no authority to the contrary other than *Housecraft*'s statement that a bankruptcy court may extend derivative standing to individual creditors. But an individual creditor's interest in maximizing its recovery does not necessarily create a conflict of interest with the estate (for example, when it pursues claims designed to increase the size of the estate), much less a conflict so severe that its pursuit of a debtor's claims will not benefit the estate. Moreover, since the Second Circuit decided *Adelphia* and *Smart World* after it decided *Housecraft*, it plainly has not read *Housecraft* to forbid bankruptcy courts from considering conflicts of interest when deciding whether derivative standing best serves an estate. The bankruptcy court appropriately considered the conflict of interest between Tutor Perini and the estate as one non-dispositive factor in its analysis. *See* AER 861.

Tutor Perini's second objection likewise lacks merit. It points to several bankruptcy court decisions dealing with lien perfection and avoidance to contend that creditors may obtain derivative standing to pursue suits that do not bring incremental value to the estate. *See In re Moorhouse*, 487 B.R. 151 (Bankr. W.D.N.Y. 2013); *In re Enron Corp.*, 294 B.R. 232 (Bankr. S.D.N.Y. 2003); *In re Kearney Hotel Partners*, 92 B.R. 95 (Bankr. S.D.N.Y. 1988). These cases

are entirely inapposite.  None addressed, or so much as mentioned, derivative standing.  *Enron* involved a claim against a debtor, not on its behalf.  The claims in *Moorhouse* and *Kearney Hotel Partners*, unlike Tutor Perini's proposed claims, sought to add value to the estate available to all unsecured creditors, not to prioritize the interests of a narrow band of unsecured creditors over others.  Thus, as with its argument that a bankruptcy court may not consider a creditor's conflict of interest, Tutor Perini indentifies no pertinent authority holding that a claim benefits the estate when it brings no value to it.

Substantial authority holds otherwise.  The Second Circuit has instructed courts to consider the probable "financial recovery" in assessing whether pursuit of a claim would benefit the estate.  *STN*, 779 F.2d at 905; *see also Adelphia*, 544 F.3d at 425–26.  On similar facts to those here, another court in this district held that derivative standing was inappropriate for a claim that "does not actually seek to retrieve value for the Debtors' estate but seeks simply to rearrange the order of priority."  *Sabine*, 562 B.R. at 224.  Tutor Perini's argument that a claim benefits the estate even when it "do[es] not involve a recovery component," Opening Br. at 18, is irreconcilable with these authorities.

Tutor Perini also misunderstands the bankruptcy court's role in weighing the costs and benefits to the estate.  Second Circuit precedent requires the bankruptcy court to consider a number of factors when deciding whether to grant derivative standing—including the likelihood and amount of recovery, but also monetary costs and the possibility of delay.  *See Adelphia*, 544 F.3d at 425–26; *STN*, 779 F.2d at 905.  Its job is not to rubber-stamp any request for derivative standing once a creditor demonstrates some possibility of benefit to the estate, no matter how paltry.  The bankruptcy court possesses "significant authority both to manage the litigation and to check any potential for abuse by the parties" when conducting this inquiry.  *Commodore*, 262

F.3d at 100.  Thus, even accepting Tutor Perini's argument that its claims could benefit the estate without bringing it incremental value, the bankruptcy court was free to consider a lack of incremental value in deciding whether any benefits outweighed the costs.  The bankruptcy court appropriately weighed these factors, and so did not abuse its discretion.

The Court finds no error in the bankruptcy court's conclusion that Tutor Perini's pursuit of its proposed claims would not be in the best interests of the estate.  It appropriately denied derivative standing on that basis.  Thus, the Court need not address the bankruptcy court's alternative rationale that Tutor Perini's proposed claims were not colorable.  *See* AER 860–61; *STN*, 779 F.2d at 905.

## Conclusion

At bottom, Tutor Perini seeks not to pursue claims that will grow the size of the bankruptcy estate available to all creditors, but rather claims that its own interests should receive higher priority.  The bankruptcy court did not abuse its discretion in finding that Tutor Perini's pursuit of these claims would not be in the estate's best interests.  The bankruptcy court's order is thus AFFIRMED.  The Clerk of Court is respectfully directed to close the case.


SO ORDERED.

Dated: February 16, 2021
     New York, New York

_____
ALISON J. NATHAN
United States District Judge